**NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| ABIRA MEDICAL LABORATORIES, LLC d/b/a GENESIS DIAGNOSTICS,<br><br>Plaintiff,<br><br>v.<br><br>ALLIED BENEFIT SYSTEMS, LLC, *et al.*,<br><br>Defendants. | Civil Action No. 23-04002 (GC) (TJB)<br><br>**MEMORANDUM OPINION** |

**CASTNER, District Judge**

**THIS MATTER** comes before the Court upon Defendants Allied Benefit Systems, LLC and Allied Benefit Systems, Inc.'s Motion to Dismiss the Second Amended Complaint (SAC) pursuant to Federal Rule of Civil Procedure (Rule) 12(b)(6). (ECF No. 24.) Plaintiff opposed, and Defendants replied. (ECF Nos. 26, 27.) The Court has carefully reviewed the parties' submissions and decides the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Defendants' Motion is **GRANTED in part** and **DENIED in part**.

**I.     BACKGROUND**

Plaintiff Abira Medical Laboratories, LLC is a New Jersey limited liability company which "operated a licensed medical testing laboratory business." (ECF No. 23 ¶¶ 6, 8.)[1] Defendants

---

[1] This is one of more than forty cases that Plaintiff has filed in the United States District Court for the District of New Jersey or had removed here from the Superior Court of New Jersey since June 2023. Each of the lawsuits generally alleges that it was denied reimbursement for providing laboratory testing services.

provide health insurance services throughout New Jersey. (*Id.* ¶ 7.) Plaintiff "performed clinical laboratory, pharmacy, genetics, addiction rehabilitation, and COVID-19 testing services on specimens submitted by medical service providers, on behalf of Defendant[s'] subscribers/members, for numerous patients located throughout the United States." (*Id.* ¶ 8.) Plaintiff alleges that "requisitions of laboratory testing services that were submitted on behalf of Defendant[s'] insureds contained an assignment of benefits, which created contractual obligations on [the] part of the Defendant[s] to pay for the Laboratory Testing Services that were provided by Plaintiff to Defendant[s'] insureds/members/subscribers."[2] (*Id.* ¶ 9.)

Plaintiff attached a spreadsheet to the SAC which sets forth the "patients who were rendered Laboratory Testing Services, the dates of service, the amounts billed for those services, and their respective ascension numbers." (*Id.* ¶ 11.) Plaintiff contends that "[b]y virtue of the [Defendants'] patients' execution(s) of their respective assignment of benefits on the requisition

---

[2]   Plaintiff alleges the assignment executed by Defendants' insureds states as follows:

> I hereby assign all rights and benefits under my health plan and direct payments be made to Genesis Diagnostics for laboratory services furnished to me by Genesis Diagnostics. I irrevocably designate authorize and appoint Genesis Diagnostics or its assigned affiliates as my true and lawful attorney-in fact for the purpose of submitting my claims and pursuing any request, disclosure, appeal litigation or other remedies in accordance with the benefits and rights under my health plan and in accordance with any federal or state laws[.] If my health plan fails to abide by my authorization and makes payment directly to me, I agree to endorse the insurance check and forward it to Genesis Diagnostics immediately upon receipt. I hereby authorize Genesis Diagnostics or its assigned affiliates to contact me for billing or payment purposes by phone, text message, or email with the contact information that I have provided to Genesis Diagnostics, in compliance with federal and state laws.
>
> [(ECF No. 23 ¶ 10.)]

of services forms submitted to Plaintiff, and thereafter Plaintiff's tendering of Laboratory Testing Services to each of Defendant[s'] subscribers/members, contractual obligations arose between the Plaintiff and Defendant[s] with respect to each of the patients." (*Id.* ¶ 12.)

Plaintiff avers that although Defendants paid "a number of claims," they "did not pay and/or underpaid approximately . . . one hundred and eighteen of the claims submitted by Plaintiff over the course of several years." (*Id.* ¶ 30.) The total amount of payments said to be due and owing is over $281,197.65. (*Id.* ¶ 21.) According to Plaintiff, Defendants "engaged in a long campaign designed to deprive Plaintiff of thousands of dollars it is rightfully owed for services Plaintiff rendered to Defendant[s'] subscribers and/or members" including by "repeatedly either fail[ing] to respond at all to properly submitted claims or fabricat[ing] some other pretextual basis to improperly refuse to make payment to Plaintiff." (*Id.* ¶ 13.)

Plaintiff filed its initial Complaint on June 5, 2023, and Defendants thereafter removed the action to this Court on July 26, 2023.[3] (ECF No. 1.) After Defendants moved to dismiss the Complaint (ECF No. 5), Plaintiff filed its First Amended Complaint (FAC) (ECF No. 7). On May 29, 2024, the Court granted Defendants' Motion to Dismiss the FAC and granted Plaintiff leave to file a SAC. (ECF Nos. 12, 21, 22.) In its SAC, Plaintiff asserts four causes of action against Defendant: Count One for breach of contract; Count Two for breach of the implied covenant of good faith and fair dealing; Count Three for fraudulent and negligent misrepresentation and equitable and promissory estoppel; and Count Four for quantum meruit/unjust enrichment. (ECF No. 23 ¶¶ 16-41.)

---

[3] At the time of removal, Plaintiff was asserting federal claims, giving the Court federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. S 1367. (ECF No. 1.) In the SAC, Plaintiff no longer pleads any federal claims. (*See generally* ECF No. 23.) Nevertheless, the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

## II. **LEGAL STANDARD**

On a motion to dismiss for failure to state a claim upon which relief can be granted, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. Of Sch. Directors of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)). When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 903 (3d Cir. 2021)). The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

For claims of fraud, plaintiffs "must satisfy the heightened pleading standards of Federal Rule of Civil Procedure 9(b)." *Burns v. Stratos*, 2023 WL 4014474, at *2 n.3 (3d Cir. June 15, 2023) (citing *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)). This ordinarily requires "[a] plaintiff alleging fraud . . . [to] support its allegations 'with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue.'" *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)). "Rule 9(b)'s 'normally rigorous particularity

4

rule has been relaxed somewhat where the factual information is particularly within the defendant's knowledge or control.' But even if a relaxed application of Rule 9(b) were warranted . . . , [a plaintiff] would still need to allege facts demonstrating that his [or her] fraud claims are plausible." *Tripati v. Wexford Health Sources Inc.*, 2022 WL 17690156, at *2 n.3 (3d Cir. Dec. 15, 2022) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997)).

## III. DISCUSSION

### A. Count One—Breach of Contract

Plaintiff's breach of contract claim in the FAC was dismissed because Plaintiff did not allege enough facts to plausibly assert that a contract existed between the parties. (ECF No. 21 at 5.[4]) Among other deficiencies, the Court noted that Plaintiff did not "identify the individual insureds/claimants or how many insureds/claimants are involved in this case." (*Id.*) In the SAC, however, Plaintiff identifies the insureds/claimants and the specific language in the assignments of benefits that were purportedly executed by those insureds/claimants. (*See* ECF No. 23 at 4-5, 16-17.) Plaintiff also alleges that Defendants either failed to pay or underpaid approximately 118 claims submitted by Plaintiff over the course of several years. (*Id.* ¶ 30.)

Defendants contend that the SAC still fails to state a claim because Plaintiff "cannot state that Defendants were parties to the underlying 'contract' under which the patients assigned [Plaintiff] their benefits." (ECF No. 24-1 at 10.) Plaintiff, on the other hand, argues that it is "not provided a copy of the underlying insurance contract or plan documents during the process of administrating a claim" so "it would be unjust to require Plaintiff to cite to specific provisions of the plan requiring payment." (ECF No. 26 at 13.) Instead, Plaintiff contends that "there [was] a

---

[4] Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

reasonable expectation by Plaintiff that Defendant[s] would have compensated Plaintiff[] in light of services rendered, the industry standard and regular cour[se] of conduct between an insurer and health care provider." (*Id.* at 15.) Plaintiff further argues that the allegations regarding the assignments and insureds/claimants at issue are sufficient to put Defendants on notice regarding Plaintiff's contractual right to sue for breach. (*Id.* at 14.) Finally, Plaintiff argues that Defendants' payment of *some* claims suggests that an implied contract exists. (*Id.* at 15.)

At this preliminary stage, construing the allegations in the light most favorable to Plaintiff, the Court finds that Plaintiff has plausibly alleged a breach of contract claim. Unlike in the FAC, Plaintiff has now identified the insureds/claimants at issue, the amount due for the services rendered to each insured/claimant, the date of those services, and the specific language of the assignment executed by the insureds/claimants. (*Id.* at 4-5, 16-17.) Under New Jersey law, "contract rights are generally assignable except where assignment is prohibited by operation of law or public policy." *Somerset Orthopedic Assocs., P.A. v. Horizon Blue Cross & Blue Shield of N.J.*, 785 A.2d 457, 462 (N.J. Super. Ct. App. Div. 2001). Plaintiff alleges that each of Defendants' insureds executed an assignment of "all rights and benefits under [their] health plan," they "direct[ed] payments be made to [Plaintiff] for laboratory services furnished" to them by Plaintiff, and Defendants failed to compensate Plaintiff accordingly. (ECF No. 23 ¶¶ 10, 15.)

Although the SAC does not contain detailed factual allegations about the underlying contracts between Defendants and their alleged insureds[5] or any allegations related to

---

[5] Defendants contend that they are not insurance companies, but rather claims processors for group health plans. (ECF No. 27 at 5.) According to Defendants, Plaintiff's characterization of the patients at issue as "Defendant[s'] insureds" is therefore misleading. Defendants may renew this argument at a later stage of the proceedings, but at this stage the Court must accept Plaintiff's factual allegations as true and draw all reasonable inferences in its favor. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

preauthorization of claims, the factual allegations in the SAC are sufficient to put Defendants on notice of the grounds for Plaintiff's breach of contract claim. *See Motamed v. Chubb Corp.*, Civ. No. 15-7262, 2016 WL 1162853, at *4 (D.N.J. Mar. 24, 2016) ("While [the p]laintiffs do not cite specific contract provisions . . . [the defendant] was adequately put on notice of what [the p]laintiffs' claims are and the grounds upon which they rest."); *cf. Abira Med. Lab'ys v. Metro Risk Mgmt., LLC*, Civ. No. 23-20391, 2024 WL 3580759, at *1-4 (D.N.J. Jul. 29, 2024) (finding that the plaintiff's breach of contract claim that failed to identify any insureds/claimants did not allow the court to plausibly infer that a contract existed). The Court finds that Plaintiff's allegations regarding the specific insureds/claimants at issue and the assignments they allegedly executed are sufficient at this stage. *Cf. Abira Med. Lab'ys, LLC v. BPA Bestlife Benefit Plan Administrators*, Civ. No. 24-00898, 2024 WL 4615731 (D.N.J. Oct. 30, 2024) (dismissing the plaintiff's breach of contract claim where the complaint did "not allege that [the] [d]efendant paid for any services" and where the plaintiff failed to identify any of the insureds/claimants); *Metro Risk Mgmt., LLC*, 2024 WL 3580759, at *4 (dismissing the plaintiff's breach of contract claim based on "unidentified claimants" because the plaintiff did not allege facts allowing for a plausible inference that a contract existed). Plaintiff's allegations have "raise[d] a reasonable expectation that discovery will reveal evidence regarding a contractual relationship between it and [Defendants] in the form of assignments of benefits from [Defendants'] insureds, [Defendants'] payment or nonpayment pursuant to those assignments, and any breach in [Defendants'] failure to pay the full amount it owed." *See Abira Med. Lab'ys, LLC v. Kaiser Found. Health Plan of Mid-Atl. States, Inc.*, 2024 WL 2188911, at *2 (E.D. Pa. May 15, 2024) (internal quotation marks omitted).

Other district courts reviewing similar pleadings filed by Plaintiff have reached the same conclusion and allowed Plaintiff to further develop its breach of contract claim through discovery.

7

*See Abria Med. Lab'ys, LLC v. Harvard Pilgrim Health Care, Inc.*, 2024 WL 4173781, at *6 (E.D. Pa. Sept. 12, 2024) (allowing the plaintiff's breach of contract claim to proceed where it "attached a chart as an exhibit . . . listing the [insureds/claimants] that it allegedly performed laboratory testing services for, the dates of service, the amounts billed for those services, and the respective accession numbers for the claims"); *Abira Med. Lab'ys, LLC v. CareSource*, 2024 WL 4817444, at *2 (S.D. Ohio Nov. 18, 2024) ("[The plaintiff] alleges that it received requisition documents with assignments from approximately 192 laboratory testing services for [the defendant's] members. . . . At the current stage, [the plaintiff] has plausibly shown a contractual relationship existed with [the defendant].").

Accordingly, Defendants' Motion to Dismiss is denied as to Count One.

### B. Count Two—Breach of the Implied Covenant of Good Faith and Fair Dealing

The Court previously dismissed Plaintiff's claim for breach of the implied covenant of good faith and fair dealing because Plaintiff failed to plausibly allege the existence of a contract. (ECF No. 21 at 8.) The Court also noted that Plaintiff's breach of the implied covenant claim could be subject to dismissal as duplicative of its breach of contract claim. (*Id.*)

A plaintiff may assert a breach of the implied covenant of good faith and fair dealing claim where "a party has not violated a literal term of the agreement—which would give rise to a breach of contract claim—but has violated the spirit and purpose of the agreement." *Gap Props., LLC v. Cairo*, Civ. No. 19-20117, 2020 WL 7183509, at *4 (D.N.J. Sept. 17, 2020). A breach of the implied covenant of good faith and fair dealing claim, however, can be dismissed at the motion to dismiss stage if the allegations that form the basis of the breach of contract claim are the same as those that form the basis of the implied covenant claim or "where it is undisputed that a valid and unrescinded contract governs the conduct at issue." *Spellman v. Express Dynamics, LLC*, 150 F.

Supp.3d 378, 390 (D.N.J. 2015); *see also Beaman v. Bank of Am., N.A.*, Civ. No. 21-2056, 2023 WL 4784254, at *16 (D.N.J. July 27, 2023) (dismissing the plaintiffs' claims for breach of the implied covenant of good faith and fair dealing as duplicative of their breach of contract claims where the implied covenant claims were "alleged as breaches of the parties' express contract").

Although Plaintiff's claim for breach of the implied covenant of good faith and fair dealing in the SAC rests on similar factual allegations as its breach of contract claim (*see* ECF No. 23 ¶¶ 20, 26), the Court will allow the implied covenant claim to proceed because it is not clear at this preliminary stage that the now alleged contract governs the conduct at issue to warrant dismissal of Count Two. *Spellman*, 150 F. Supp. 3d at 390 ("[W]here a contract's existence or its specific terms are disputed, a court may allow breach of contract claims to proceed through discovery or trial alongside alternative causes of action."); *see also* Rule 8(d) (permitting parties to plead multiple claims alternatively or hypothetically). Here, Defendants dispute that a valid contract exists between the parties. (ECF No. 24-1 at 7 (arguing that "Plaintiff fails to allege any facts to support the existence of an express or implied contract").) Because the parties dispute the terms and nature of the alleged contractual obligations, the Court cannot determine at this stage whether the conduct alleged in Count Two "differs from a literal violation of . . . a pertinent express term" or is governed by the express terms of a valid contract to warrant dismissal. *Spellman*, 150 F. Supp. 3d at 390. Therefore, the Court will not dismiss Count Two at this preliminary stage.

### C. Count Three— Fraudulent Misrepresentation, Negligent Misrepresentation, Equitable Estoppel, and Promissory Estoppel

The Court dismissed Plaintiff's claims for fraudulent and negligent misrepresentation and equitable and promissory estoppel in the FAC because Plaintiff did not sufficiently allege that Defendants made any promises or misrepresentations. (ECF No. 21 at 9-10.) In the SAC, Plaintiff alleges that it "submitted approximately one hundred and eighteen claims to Defendant[s]

regarding Laboratory Testing Services" and that "Defendant[s'] representatives not only requested those services on behalf of Defendant[s'] insureds/members/subscribers, but represented to Plaintiff that the patients/insureds were all covered by policies of insurance issued by Defendant[s] and that Defendant[s] would pay for the services to be rendered by the Plaintiff to Defendant[s'] insureds" (ECF No. 23 ¶ 29.) The Court finds that Plaintiff's allegations in the SAC lack the factual matter needed to plausibly support these allegations. Plaintiff has thus not cured the deficiencies identified by the Court in its May 29, 2024 Opinion. (ECF No. 21 at 6-8.)

The Court finds that further amendment would be futile. Thus, Count Three is dismissed with prejudice. *See Grooms v. Ally Fin.*, Civ. No. 23-2285, 2023 WL 8251315, at *2 (3d Cir. Nov. 29, 2023) ("[W]e agree with the [d]istrict [c]ourt's determination that amendment would be futile and therefore the [d]istrict [c]ourt properly dismissed the complaint with prejudice.").

### D.    Count Four—Quantum Meruit/Unjust Enrichment

Plaintiff's claim for quantum meruit/unjust enrichment rests on its allegation that Defendants "enriched [themselves] at Plaintiff's expense by failing and refusing to compensate Plaintiff for providing Laboratory Testing Services to Defendant[s'] subscribers and/or members, and instead Defendant[s] [are] using those funds for Defendant[s'] own purposes." (ECF No. 23 ¶ 38.) Both quantum meruit and unjust enrichment "require[] a determination that [the] defendant has benefitted from [the] plaintiff's performance." *MHA, LLC v. Amerigroup Corp.*, 539 F. Supp. 3d 349, 361 (D.N.J. 2021) (quoting *Woodlands Cmty. Ass'n, Inc. v. Mitchell*, 162 A.3d 306, 310 (N.J. Super. Ct. App. Div. 2017)).

In its previous Opinion, the Court dismissed Plaintiff's claim for quantum meruit/unjust enrichment because Plaintiff had not "plausibly pleaded that benefits were conferred on Defendants." (ECF No. 21 at 10.) However, Plaintiff has now identified the insureds/claimants at issue, the amount due for the services rendered to each insured/claimant, the date of those

services, and the specific language of the assignment executed by the insureds/claimants. (*See* ECF No. 23 at 4-5, 16-17.) Plaintiff has sufficiently pled allegations allowing the Court to infer that Defendants retained a benefit under a plan without payment. Moreover, Plaintiff has sufficiently alleged that Defendants' retention of the benefit was unjust. (*See* ECF No. 23 ¶ 13 (alleging that Defendants "engaged in a long campaign designed to deprive Plaintiff of thousands of dollars it is rightfully owed for services" by "repeatedly either fail[ing] to respond at all to properly submitted claims or fabricat[ing] some other pretextual basis to improperly refuse to make payment to Plaintiff").) *See Harvard Pilgrim*, 2024 WL 4173781, at *7 (finding that the plaintiff stated a claim for quantum meruit/unjust enrichment where it alleged that the defendant "engaged in a long campaign designed to deprive [the p]laintiff of thousands of dollars it is rightfully owed for services' by either failing to respond to properly submitted claims or 'fabricat[ing] some other pretextual basis to improperly refuse to make payment to [the p]laintiff'"); *Kaiser*, 2024 WL 2188911, at *8 (denying a motion to dismiss the plaintiff's quantum meruit/unjust enrichment claim where the plaintiff alleged that it "performed lab testing for [the defendant's] members, it conferred a benefit on [the defendant], and that [the defendant] unjustly retained that benefit by failing to compensate" the plaintiff); *CareSource*, 2024 WL 4817444, at *6 (denying a motion to dismiss the plaintiff's unjust enrichment/quantum meruit claim where the plaintiff alleged "that it conferred a benefit upon [the defendant] when it performed laboratory testing services, [the defendant] was aware of the benefits, and it was unjust for [the defendant] to 'fail[ ] and refus[e] to compensate [the p]laintiff' for its services").

Finally, as the Court noted in its previous Opinion, district courts in this Circuit have consistently dismissed unjust enrichment claims when a healthcare provider sues an insurer for the unreimbursed costs of a procedure performed on behalf of an insured because benefits for medical

11

services inure "only to the patients treated," not the insurers. (ECF No. 21 at 19 n.6 (quoting *Plastic Surgery Ctr., LLC v. Oxford Health Ins., Inc.*, Civ. No. 18-2608, 2019 WL 4750010, at *6 (D.N.J. Sept. 30, 2019).) But at least one court in this Circuit has interpreted the United States Court of Appeals for the Third Circuit's decision in *Plastic Surgery Center, P.A. v. Aetna Life Insurance. Co.*, 967 F.3d 218, 241 n.26 (3d Cir. 2020) as "opening the door for unjust enrichment claims against insurers." (ECF No. 21 at 10-11 (citing *MHA, LLC*, 539 F. Supp. 3d at 360).) At this preliminary stage, the Court is persuaded by the reasoning in *Plastic Surgery Center* that "where a healthcare provider claims unjust enrichment against an insurer, the benefit conferred, if any, is not the provision of the healthcare services *per se*, but rather the discharge of the obligation the insurer owes to its insured." 967 F.3d at 240. Therefore, the Court denies Defendants' Motion to Dismiss as to Count Four, but Defendants may renew their argument at a later stage based on a more fulsome record.

## IV.  CONCLUSION

For the foregoing reasons, and other good cause shown, Defendants' Motion to Dismiss (ECF No. 24) is **GRANTED in part** and **DENIED in part**. An appropriate Order follows.

Dated: January 23, 2025

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE

12